UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

DAVID MOON,

        Plaintiff,                          Case No. 1:24-cv-1067

v.                                           Honorable Sally J. Berens

CARMEN MCINTYRE LEON et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims: Plaintiff's Fourteenth Amendment equal protection claims, claims under the Americans with Disabilities Act (ADA), and claims under the Rehabilitation Act (RA). Plaintiff's Eighth Amendment claims against all Defendants, First Amendment retaliation claims against Defendants McClain, Trarore, Cline, and Rurka, and supplemental state law claims remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which she complains, however, occurred at the Lakeland Correctional Facility (LCF) in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Coldwater, Branch County, Michigan. Plaintiff sues the following members of the MDOC Gender Dysphoria Collaborative Review Committee (GDRC) in their individual capacities: Chief Medical Officer Carmen McIntyre, M.D., Chief Psychiatric Officer/Assistant Chief Medical Officer Theadia Carey, M.D., Physician Assistant Gina Couturier, James Blessman, M.D., David Dawdy, Fadi Ibrahim, M.D., Physician Assistant E'Coe Hill, Physician Assistant Rosilyn Jindal, and Raziuddin Ali, M.D. Plaintiff also sues the following LCF staff in their individual capacities: Sergeants Unknown Cook, Unknown Tilitson, and Unknown Hudson, Prison Counselor Unknown Dirschell, Assistant Resident Unit Manager Unknown Cope, Lieutenants Unknown Carter and Unknown McClain,[2] Captain Unknown Lamontaine, Corrections Officer Unknown Johnson, Acting Assistant Deputy Warden Unknown Cline, and Acting Deputy Warden Unknown Rurka.

Plaintiff identifies as a gender dysphoric intersex woman, who uses she/her/hers pronouns and is receiving hormone treatments as part of her gender affirming care. (ECF No. 1, PageID.5–6.) In May 2023, Plaintiff received a diagnosis of gender dysphoria, which was confirmed by the GDRC in June 2023. (*Id.*, PageID.6.) MDOC policy requires that the GDRC formulate a management plan for gender dysphoric prisoners, including facility placement, housing accommodations, and access to toilet and shower facilities in relative privacy in accordance with the Prison Rape Elimination Act (PREA) due to the "known threat and high volume of assaults associated with improper placement and housing of LGBTQI+ people, especially those that identify as intersex, trans, or gender non-conforming." (*Id.*) However, the GDRC did not provide Plaintiff with a management plan to address her needs for housing accommodations or relative privacy. (*Id.*)

---

[2] Plaintiff refers to this Defendant as "McClaine" in the caption of the complaint but uses the spelling "McClain" throughout the body of the complaint. The Court will therefore refer to this Defendant using the spelling McClain, intending to be inclusive of both.

On September 22, 2023, in the absence of a management plan, Plaintiff was transferred to LCF, which houses prisoners in an "open setting which consists of 6 to 8 man cubes." (*Id.*) Upon arrival, Plaintiff informed healthcare of her status as a gender dysphoric intersex woman; however, a non-party nurse informed Plaintiff that she did not understand the term. (*Id.*, PageID.7.) Plaintiff was placed in a six-person open-setting cube with no relative privacy. (*Id.*) She spoke with Defendant Cook who told Plaintiff that he couldn't do anything because it was the weekend although he had the authority to place Plaintiff in protective custody until the issue was resolved. (*Id.*)

On September 24, 2023, during Plaintiff's PREA screening, Plaintiff told Defendant Dirschell in detail of her status as a gender dysphoric prisoner and her fear of being sent to the E/F unit. (*Id.*) Defendant Dirschell told Plaintiff that Plaintiff could not stay in intake and specifically moved Plaintiff to the E/F unit a few days later. (*Id.*)

On September 27, 2023, Plaintiff's non-party caseworker, Ms. Freds, told Plaintiff that Plaintiff had no management plan, which should have been done pursuant to MDOC policy. (*Id.*)

On September 29, 2023, Plaintiff was moved the F1 unit, which was the furthest from the officer's station, and was placed in an open cube setting with seven bunkmates. (*Id.*) That day, other prisoners began to sexually harass and threaten Plaintiff. (*Id.*)

On October 2, 2023, Plaintiff met with Defendant Cope, explained "her situation," and asked to be moved to safer housing. (*Id.*) Defendant Cope refused Plaintiff's request and told Plaintiff that there was no proof that Plaintiff was gender dysphoric. (*Id.*, PageID.8.) From September 29, 2023, until October 15, 2023, Plaintiff continued to face sexual harassment and hostility because she refused "unwanted and unsolicited sexual advances." (*Id.*)

5

On October 15, 2023, Plaintiff spoke with Defendants Carter and Hudson and requested protection from prisoners who were pressing her for sex and threatening her. (*Id.*) Defendant Carter denied Plaintiff's request and "hours later," Plaintiff was violently sexually assaulted while in the restroom. (*Id.*)

On the morning of October 16, 2023, Plaintiff spoke with Defendants Carter and Lamontaine, showed them her injuries from the day before, and again requested protection. (*Id.*) Defendants denied Plaintiff's request and refused to refer Plaintiff to healthcare. (*Id.*) That same day, Plaintiff also spoke with Defendants Tilitson and McClain and informed them of her intentions to harm herself, her dangerous living conditions, and the assault that had taken place the day before. (*Id.*) Defendant Tilitson left the room, and Defendant McClain told Plaintiff he didn't want to hear about her being assaulted, or he would write her a ticket for fighting. (*Id.*, PageID.8–9.) Defendant McClain denied Plaintiff's request for mental health services, returned Plaintiff to her unit, and issued Plaintiff a Class I misconduct, which resulted in Plaintiff being placed in segregation that night. (*Id.*, PageID.9.)

Once in segregation, Plaintiff informed non-party Officer Trarore of her suicidal intent. (*Id.*) Officer Trarore called Defendant McClain, who threatened Plaintiff to return to her regular cell as he did not want to do the paperwork. (*Id.*) Defendants Tillitson and McClain denied Plaintiff's request for suicide watch. (*Id.*, PageID.10.)

On October 17, 2023, Plaintiff requested medical services from Defendant Johnson on two occasions. (*Id.*, PageID.9.) The first time, Defendant Johnson told Plaintiff that "she was lying and that nothing was wrong with her f***** a**," and the second time, Defendant Johnson told Plaintiff "to do the world a favor and kill herself." (*Id.*) Plaintiff attempted to hang herself using a bedsheet attached to a sprinkler and blacked out. (*Id.*) When Plaintiff awoke, Defendant Johnson

6

and others were standing around Plaintiff shouting, and Defendant Johnson "wrenched her left arm while making comments about his desire to beat her." (*Id.*) Plaintiff was dragged to the strip search area, where her injuries were exposed. (*Id.*) While there, Plaintiff asked "not to be hurt anymore." (*Id.*) Non-party Officer Sullenberger photographed Plaintiff's ligature marks but refused to document Plaintiff's other injuries. (*Id.*, PageID.10.) Plaintiff was placed in an observation cell. (*Id.*)

On or around October 18 or 19, 2023, Plaintiff spoke with Defendant Cline regarding the events described herein. (*Id.*) Defendant Cline moved Plaintiff to the E2 unit without addressing Plaintiff's concerns. (*Id.*)

On November 9, 2023, Plaintiff began a hunger strike due to constant harassment from other inmates in the dining hall, which caused Plaintiff to fear for her safety. (*Id.*)

On November 12, 2023, Plaintiff was physically assaulted and threatened by another inmate while in her cube. (*Id.*) Plaintiff was detained for illegally assaulting that inmate but was exonerated by video footage. (*Id.*) Plaintiff was moved to the C5 unit. (*Id.*) When Plaintiff expressed to Defendant Cline her desire to begin the grievance process for the lack of action taken to address Plaintiff's concerns, Defendant Cline told Plaintiff that Defendant Cline was only allowing Plaintiff to stay in C5 if Plaintiff did not "cause problems." (*Id.*, PageID.11.) Defendant Cline told Plaintiff, "[L]eave the paperwork alone or I'll move you back to the E or F unit." (*Id.*)

On December 15, 2023, Plaintiff asked non-party Officer Clevenger to speak to a shift commander. (*Id.*) Officer Clevenger left to make a call and, when he returned, told Plaintiff to cuff up. (*Id.*) Plaintiff was taken to solitary confinement where Defendant Johnson called Plaintiff "transphobic epithets," told Plaintiff that she should kill herself, and threatened to attack Plaintiff during Plaintiff's strip search. (*Id.*)

7

On December 22, 2023, Plaintiff was evaluated by non-party Physician's Assistant Ouelette, who informed Plaintiff that the GDRC had "rectified their mistake and issued the proper housing accommodations along with [Plaintiff's] hormonal treatment" a week prior on December 15, 2023. (*Id.*) That same day, Plaintiff asked Defendants Cline and Rurka "to be PREA compliant" and move Plaintiff to housing unit A which was the only single or double-person cell unit. (*Id.*) Both Defendants threatened to move Plaintiff back to the E/F units where she had been assaulted. (*Id.*, PageID.12.) When Plaintiff objected, Defendant Rurka threatened to classify Plaintiff as involuntary solitary confinement and increase Plaintiff's security setting to maximum unless she agreed to stay in the open cube setting. (*Id.*)

From December 22, 2023, until December 27, 2023, Plaintiff was denied access to a "relative private shower" until another prisoner attempted to sexually assault Plaintiff in the shower, and she reported it. (*Id.*) On December 28, 2023, Plaintiff was transferred to the Bellamy Creek Correctional Facility. (*Id.*)

Plaintiff seeks compensatory and punitive damages. (ECF No. 1, PageID.14.)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff states that she intends to bring Eighth Amendment claims for deliberate indifference and failure to protect, Fourteenth Amendment claims for violation of Plaintiff's right to equal protection, and claims under Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). (ECF No. 1, PageID.13–14.) The Court will also construe Plaintiff's complaint as raising claims for First Amendment retaliation.

### A.   Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual

punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1. Failure to Protect

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Plaintiff alleges that Defendants McIntyre, Carey, Couturier, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Ali, as members of the GDRC, were aware of the substantial risks of serious harm facing intersex, trans, and gender non-conforming prisoners in the traditional prison setting, but were deliberately indifferent to that risk in failing to put in place a management plan even after confirming Plaintiff's diagnosis of gender dysphoria in June 2023. (ECF No. 1, PageID.6.) Taking Plaintiff's allegations as true, as is required at this stage of the proceedings, the Court finds that Plaintiff has sufficiently pleaded an Eighth Amendment claim against Defendants McIntyre, Carey, Couturier, Blessman, Dawdy, Ibrahim, Hill, Jindal, and Ali.

Plaintiff also alleges that, at various points during her incarceration at LCF, she told Defendants Cook, Dirschell, Cope, Hudson, Carter, Lamontaine, McClaine, Johnson, Cline, Tilitson, and Rurka of Plaintiff's status as a gender dysphoric, intersex prisoner and her concerns related to that status, threats of assault, and/or Plaintiff's suicidal thoughts, but that Defendants refused to take action to prevent Plaintiff from harm. These allegations, taken as true, are similarly sufficient to state Eighth Amendment claims against the remaining Defendants.

### 2. Deliberate Indifference to Plaintiff's Medical Needs

Plaintiff alleges that, following the October 15, 2023 assault, Plaintiff spoke with Defendants Carter, Lamontaine, Tilitson, and McClain regarding the assault and her injuries, and her need for medical and/or mental health treatment; however, Defendants refused to refer Plaintiff to healthcare. (ECF No. 1, PageID.8.) Plaintiff also alleges that she requested medical services from Defendant Johnson on two occasions, but that Defendant Johnson instead encouraged Plaintiff to kill herself. (*Id.*, PageID.9.)

11

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

The Court finds that, based upon the facts alleged, Plaintiff has sufficiently stated an Eighth Amendment claim for deliberate indifference to her serious medical needs against Defendants Carter, Lamontaine, Tilitson, McClain, and Johnson.

**B.      Fourteenth Amendment Equal Protection Claim**

Plaintiff references an alleged violation of her right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, she must show that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff fails to allege any facts suggesting that others who were similarly situated were treated differently. Though Plaintiff alleges that she is a gender-dysphoric, intersex woman and has been treated poorly, Plaintiff does not allege how she believes she was treated *unequally*. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

**B. ADA and RA Claims**

Plaintiff alleges that Defendants have violated her rights as a gender-dysphoric, intersex prisoner. She seeks to bring claims under the ADA and the RA. The ADA and Section 504 of the RA "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024) (internal citations omitted).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that she is a "qualified person," that she has a "disability," and that she has been denied a "service, program, or activity" of the state or subjected to discrimination.

Similarly, Section 504 of the RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to

13

discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted)). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his or her official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted).

Here, Plaintiff sues Defendants in their individual capacities only and does not name the public entity or any official acting in his or her official capacity. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims will be dismissed.

      **C.**     **First Amendment Retaliation Claims**

Plaintiff alleges that, when she attempted to tell Defendant McClain of the October 15, 2023 assault, Defendant McClain told Plaintiff that he did not want to hear about it and, in response, issued Plaintiff a Class I misconduct, which resulted in Plaintiff's placement in segregation. (ECF No. 1, PageID.8–9.) Once in segregation, Plaintiff informed non-party Officer Trarore of her suicidal intent, who then threatened to return Plaintiff to her regular cell. (*Id.*, PageID.9.) Plaintiff later told Defendant Cline of her desire to begin the grievance process. (*Id.*, PageID.10.) In response. Defendant Cline told Plaintiff that Defendant Cline was only allowing Plaintiff to stay in C5 if Plaintiff did not "cause problems" and to "leave the paperwork alone or I'll move you back to the E or F unit." (*Id.*, PageID.11.) Finally, when Plaintiff asked Defendants

Cline and Rurka to move Plaintiff to the A housing unit, Defendant Cline and Rurka threatened to move Plaintiff back to the E/F units where she had been assaulted and classify Plaintiff as involuntary solitary confinement and increase Plaintiff's security setting to maximum unless she agreed to stay in the open cube setting. (*Id.*, PageID.12.) The Court will construe Plaintiff's allegations as raising claims for First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) she was engaged in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, taking Plaintiff's statements and Plaintiff's allegations regarding the conduct and statements of Defendants that followed as true, the Court finds that, at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendants McClain, Trarore, Cline, and Rurka.

### D. State Law Claims

Plaintiff also asserts violations of state law, including Michigan's ELCRA. The Court notes that claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924

15

(1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Any assertion that Defendants violated state law therefore fails to state a claim under Section 1983.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court notes that in determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted). Because Plaintiff continues to have pending federal claims, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, the following claims, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): Plaintiff's Fourteenth Amendment equal protection claims and Plaintiff's claims under the ADA and RA. Plaintiff's Eighth Amendment claims, First Amendment retaliation claims against Defendants McClain, Trarore, Cline, and Rurka, and supplemental state law claims remain in the case.

An order consistent with this opinion will be entered.

Dated:   November 13, 2024                    /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              United States Magistrate Judge