UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MOON #956376, *also known as*
*Azelie Delaina Moon,*

        Plaintiff,

v.

CARMEN MCINTYRE LEON, et al.,

        Defendants.
_____/

Case No. 1:24-cv-1067

Hon. Paul L. Maloney

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter comes before the Court on Magistrate Judge Sally J. Berens's Report and Recommendation (R&R) (ECF No. 65) in which she recommended that Defendants' motions for summary judgment (ECF Nos. 44, 57) be granted with respect to Plaintiff's failure-to-protect claim against members of the Gender Dysphoria Collaborative Review Committee (GDCRC) and denied with respect to all other claims. Plaintiff has filed an objection (ECF No. 68), and so has a group of individual Defendants (ECF No. 67). The parties have also filed responses to the objections (ECF Nos. 71-73). The Court finds the objections without merit and adopts the R&R in full.

### I.

After being served with a report and recommendation issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3).  Only those objections that are specific are entitled to a de novo review under the statute.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam).    An "objection does not oblige the district court to ignore the report and recommendation."  *Fharmacy Recs. v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012).  Our Local Rules require any party objecting to a report and recommendation to "specifically identify the portions of the proposed findings, recommendations or report to which objections are made and the basis for such objections."  W.D. Mich. LCivR 72.3(b); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (holding that "objections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error" are too general).

Courts grant summary judgment on an issue when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if a reasonable factfinder could find in favor of the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Courts make all "reasonable inferences" in favor of the nonmovant when reviewing the record.  *Malick v. Croswell-Lexington Dist. Schs.*, 148 F.4th 855, 861 (6th Cir. 2025).

## II.

Judge Berens concludes that Plaintiff's failure to protect claim is subject to the exhaustion requirement found in the Prison Litigation Reform Act (PLRA) while Plaintiff's other claims are not subject to that exhaustion requirement.

A.

According to the allegations in the complaint, GDCRC designated Moon as gender dysphoric in July 2023 and, under Michigan Department of Corrections (MDOC) policy, an individual management plan should have been created.  MDOC transferred Moon to the Lakeland Correctional Facility (LCF) in September 2023.  The lack of an individualized management plan resulted in Moon being placed in an improper housing unit and subjected to physical abuse by other prisoners.

In her report, Judge Berens explains that the exhaustion requirement of the PLRA only applies to Moon's Eighth Amendment failure-to-protect claim against members of the GDCRC[1] for their failure to issue a management plan after confirming Moon's gender dysphoria diagnosis.  Judge Berens recommends granting the GDCRC members' motions because Moon failed to exhaust this claim.

Moon objects but does not challenge whether the failure-to-protect claim was subject to the PLRA's exhaustion requirement.  Instead, Moon argues that a grievance filed in March 2024 against GDCRC members (ECF No. 1 PageID.35 Grievance 24-03–0643-28f) exhausted the failure-to-protect claim.  This objection fails for at least two reasons.  First, Plaintiff filed this lawsuit before completing the grievance process through Step III.  Plaintiff filed this lawsuit in August 2024.  MDOC issued the final rejection of that grievance in October 2024 (ECF No. 57-1 PageID.251).  Proper exhaustion requires a prisoner to

---

[1] Members of the GDCRC include Defendants Cook, Dirschell, Cope, Hudson, Carter, Lamontaine, McClain, Johnson, Cline, Tilitson, and Rurka

3

"complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Second, the grievance was filed almost six months after Moon was transferred to LCF without a management plan. The MDOC grievance policy requires that an inmate file a grievance at most within seven days of becoming aware of a grievable issue. So the first issue is when, exactly, does an issue become grievable? One court interpreted the MDOC's policy this way:

> The prison regulations do not define a "grievable issue." Although some discrete events obviously fit neatly within that label, such as an assault by a prison guard or a denial of certain privileges, other circumstances may not become "grievable" until the passage of time or the aggregation of events manifested by the conduct of several prison staff members. In the latter case, the date of the "grievable issue" may not be obvious, and the rigid application of the time limits established by the regulations becomes difficult.

*Ellis v. Vadlamudi*, 568 F. Supp. 2d 778, 783 (E.D. Mich. 2008). In other words, the grievability of a claim depends on the nature of the claim itself. So for a failure-to-protect claim to become grievable, an inmate must objectively face a "substantial risk of harm," and the officers must act with "deliberate indifference" to that risk. *Lawler ex rel. Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 926-27 (6th Cir. 2024). The term "deliberate indifference" means the officers both subjectively knew of the facts that create that substantial risk and actually concluded that this risk existed. *Id.*

The latest that Moon would have become aware of the objective risk of harm was on September 29, 2023, when MDOC placed Moon in the F1 unit at LCF. Moon also alleges that the GDCRC members were generally aware of the substantial risk of serious harm that transgender and gender non-conforming prisoners, like Moon, face in the traditional prison

4

setting.  Even if true, Moon still needed to exhaust the available administrative remedies before bringing a lawsuit.  As a result, any grievance filed more than a week after the date of placement in LCF would likely be untimely.

Moon argues the March 2024 grievance was not untimely under the continuing violation doctrine.  But the continuing violation doctrine would only apply here if the GRCDC had continued a series of unlawful acts.  *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.").  "Passive inaction," like the GDCRC's failure to implement a grievance plan, "does not support a continuing violation theory." *Id.*

Moon argues that the grievance (and a healthcare kite from February 2024) were delayed because of a threat to "leave the paperwork alone" from Defendant Cline on November 15, 2023.  Moon was also placed on modified grievance access from December 4, 2023, through March 3, 2024.  (R&R 15).  But the threat and the modified grievance access happened more than two weeks after Moon should have been aware of a grievable issue, so Moon's argument does not change this analysis.  As a result, Moon's objection is overruled.

### B.

Judge Berens also recommends denying Defendants' motions with respect to all of Moon's other claims because, unlike the failure-to-protect claim against members of the GDCRC, the MDOC's Prison Rape Elimination Act (PREA) policy applies instead of the PLRA's exhaustion requirement, and, as a result, Moon did not need to exhaust any

administrative remedies according to the MDOC's general grievance policy. Judge Berens bases her recommendation on two cases from the Eastern District of Michigan: *Rodgers v. Reviert*, No. 23-13211, 2024 WL 5414972 (E.D. Mich. Dec. 11, 2024), *R. & R. adopted*, No. 23-CV-13211, 2025 WL 542307 (E.D. Mich. Feb. 18, 2025) and *Jablonski v. Obleton*, No. 23-13097, 2024 WL 4719481 (E.D. Mich. July 22, 2024), *R. & R. adopted sub nom.*, *Jablonski v. Obelton*, No. 2:23-CV-13097, 2024 WL 4381254 (E.D. Mich. Oct. 3, 2024), *recons. denied*, No. 2:23-CV-13097, 2025 WL 555534 (E.D. Mich. Feb. 18, 2025).

In both *Rodgers* and *Jablonski*, inmates with gender dysphoria sued prison officials for their failure to protect them from sexual assault. When deciding whether the inmates' failure-to-protect claims needed to be exhausted under the MDOC's general grievance policy, the magistrate judge focused on language from that policy whereby "[g]rievances filed regarding sexual abuse shall not be processed as grievances under [the general grievance policy] but shall be reported in accordance with [the PREA policy].'" Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ D. In each of cases, the defendants argued that "regarding sexual abuse" should be interpreted to mean only physical acts of abuse. The plaintiffs argued that "regarding sexual abuse" encompassed issues that indirectly related to sexual abuse. *Rodgers*, 2024 WL 5414972, at *4. The magistrate judge concluded that either interpretation was reasonable, and, given the lack of clarity in the policy, administrative exhaustion was not required:

> The undersigned's view of the lack of clarity in the PREA and general grievance policies under these facts is supported by other courts in this Circuit. *See Jones v. Washington*, 2023 WL 7225011, at *4-5 (E.D. Mich. Oct. 11, 2023); *Haines v. Miniard*, 2023 WL 3559608, at *2-3 (E.D. Mich. Apr. 24, 2023); *Sims v. Ellis*, 2022 WL 446505 (W.D.N.Y. Feb. 14, 2022); *Frye v.*

6

*Wilt*, 2017 WL 6405623 (M.D. Penn. Dec. 15, 2017).  Judges in this District addressing these policy provisions have called the PREA reporting procedure "'so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'"  *Haines*, 2023 WL 3559608, at *2 (quoting *Ross v. Blake*, 578 U.S. 632, 643-644 (2016)); *see also Jablonski v. Obleton*, 2024 WL 4381254, at *1 (E.D. Mich. Oct. 3, 2024) (adopting the undersigned's report and recommendation, noting that because "[r]easonable minds can disagree on which policy applies to claims such as Plaintiff's," summary judgment was inappropriate.).  In *Ross*, the Supreme Court explained that when a remedy is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable.  Accordingly, exhaustion is not required."  *Ross*, 578 U.S. at 644 (citations omitted).

*Id.*

Like the plaintiffs in *Rodgers* and *Jablonski*, Moon brings a failure-to-protect claim against prison officers for their deliberate indifference to threats of sexual assault.  Moon also brings an Eighth Amendment denial-of-medical-care claim in light of unsuccessful attempts to receive health care following an instance of sexual assault and a First Amendment retaliation claim against three officers for their threats following Moon's complaints about that same instance of sexual assault.[2]  In their objections, Defendants argue that each of these claims are subjected to the MDOC's general grievance policy, and, because Moon did not exhaust grievances for these claims, the claims should be dismissed.

Defendants rely on a series of cases where courts dismissed inmates' claims even though those claims were related to sexual assault.  *See, e.g., Grover v. Lange*, No. 1:21-CV-252, 2022 WL 485028, at *4-5 (W.D. Mich. Jan. 14, 2022) (denying a prisoner's failure-to-

---

[2] Specifically, Moon alleges that (1) Defendant McClain issued a Class I misconduct after Moon attempted to tell McClain about the October 15, 2023 assault; (2) Defendant Cline threatened to move Moon from C5 back to the E or F unit if Moon pursued efforts to file a grievance about the events that had occurred since October 15, 2023; and (3) Defendants Cline and Rurka threatened to move Moon back to the E/F units where the assaults occurred.

protect claim against officers for their deliberate indifference to an instance of sexual assault because the prisoner failed to exhaust administrative remedies under the MDOC's general grievance policy); *Perkins v. Johnson*, No. CV 23-11530, 2024 WL 4481462, at *5-6 (E.D. Mich. Aug. 13, 2024) (same). But unlike *Rodgers* and *Jablonski*, the reports in *Grover* and *Perkins* do not reflect any meaningful advocacy about the word "regarding" as it appears in the general grievance policy.

Defendants try to define "regarding" themselves. They argue that the word "regarding" should be read as "with respect to," which, in the MDOC policy, they argue, would create a narrow exception only for "grievances [with respect to] sexual abuse." (*See* Defendants' Obj. 6 (citing *Regarding*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/regarding, (last visited March 11, 2026)). Setting aside the issue whether "with respect to" would actually exclude grievances that indirectly involve sexual assault, Defendants' interpretation of the word is not supported by the term's plain meaning. The district court adopting the magistrate judge's report in *Rodgers* described its understanding of the term "regarding" this way:

> ["Regarding"] means "in reference or relation to; about, concerning." *Regarding, Oxford English Dictionary* (3d ed. 2007). It has an "extremely broad" reach. *Davis v. Fenton*, 26 F.Supp.3d 727, 740 (N.D. Ill. 2014) (noting that term "arising out of" and "relating to" have an "extremely broad" reach and that the term "regarding" is "just as broad" as those terms). Indeed, the "use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" *Patel v. Garland*, 596 U.S. 328, 339 (2022) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018)).

*Rodgers*, 2025 WL 542307, at *5 (E.D. Mich. Feb. 18, 2025).

Like the courts in *Rodgers* and *Jablonski,* Judge Berens applied the correct plain-meaning definition of the term "regarding."  In doing so, the term is, at best, ambiguous about what it requires inmates to do and, as a result of that ambiguity, the PLRA's exhaustion requirement does not apply.  Defendants have failed in their objections to argue an error of law, and so their objections are overruled.

### III.

The R&R (ECF No. 65) is thus **ADOPTED**.  Defendants' motions for summary judgment (ECF No. 44, 57) are **GRANTED** with respect to Plaintiff's failure-to-protect claim against individual GDCRC members.  The motions are **DENIED** with respect to all other claims.

**IT IS SO ORDERED.**

Dated: <u>March 18, 2026</u>                    <u>/s/ Paul L. Maloney</u>
                                                                PAUL L. MALONEY
                                                                UNITED STATES DISTRICT JUDGE